Civil Service Commission, City of Philadelphia, Appellant *v.* Thomas A. Dillon, Appellee.

Argued December 12, 1985, before Judges CRAIG, BARRY and PALLADINO, sitting as a panel of three.

*Ralph J. Teti,* Divisional Deputy City Solicitor, with him, *John P. Straub* and *Barbara W. Mather,* City Solicitor, for appellant.

*Benjamin Paul,* for appellee.

OPINION BY JUDGE CRAIG, January 17, 1986:

The Civil Service Commission of the City of Philadelphia appeals from a decision of the Court of Common Pleas of Philadelphia County which reversed the commission's affirmance of Thomas A. Dillon's dismissal from the Philadelphia Police Department due to conduct unbecoming an officer, and concluded that the proper mode of separation from that service was by medical discharge on account of mental illness.

The "conduct unbecoming an officer" allegedly furnishing the "just cause" for Dillon's dismissal occurred in November, 1980, when Dillon shot and wounded citizens on two separate occasions. The department suspended Dillon and, effective December 14, 1980, dismissed him. The victims filed criminal charges against Dillon, but the court found him not guilty because of insanity. After the verdict, the police department refused to reconsider Dillon's dismissal.

On appeal the parties stipulated at the commission hearing as to Dillon's hospital records, showing that Dillon suffered from paranoid schizophrenia. The parties further stipulated that if Dillon's treating psychiatrist had testified before the commission he would have stated that Dillon's mental disease totally disabled him because it caused him not to know the difference between right and wrong. The commission affirmed the department's action.

On further appeal to the trial court, Judge LORD reversed, holding that "[w]hen conduct is alleged to be conduct unbecoming an officer, and that conduct

can be connected to a serious medical disability, that conduct cannot be considered conduct unbecoming an officer.'' The trial judge ordered that, as of the actual dismissal date of December 14, 1980, Dillon be deemed to have been separated from the department because of his medical inability to perform his required duties as an officer and retroactively awarded Dillon all benefits that he would have been entitled to receive from that date. The judge stated his intention that the department retire Dillon with all appropriate benefits. We agree with the result.[1]

Clearly, our judicial decisions do not require proof of any mens rea in order to charge an officer with unbecoming conduct. No judicial doctrine requires the employing agency to establish that the violation was intentional in the sense of showing that the officer intended to accomplish the essential result—the impairment of the morale or efficiency of the service, or of the public's respect for the service.[2]

However, for an officer to be chargeable with such a breach, the facts must at least show that the officer's conduct was voluntary, so that he could be shown to be responsible for the actions themselves, without

---

[1] Although the Pension Board, an agency separate from the commission, granted Dillon a regular pension based on separation because of his non-service-connected mental illness, we decide this appeal because, by affirming the department's action, the commission did not properly interpret the term "conduct unbecoming an officer," as it should apply in this case, in determining whether just cause existed for Dillon's dismissal.

[2] "Unbecoming conduct, on the part of a municipal employee, especially a policeman or a fireman, is any conduct which adversely affects the morale or efficiency of the bureau to which he is assigned. It is indispensable to good government that a certain amount of discipline be maintained in the public service. Unbecoming conduct is also any conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services." Zeber Appeal, 398 Pa. 35, 43, 156 A.2d 821, 825 (1959).

regard to any intentions which he may or may not have had concerning their effect. Although we specifically do not import the M'Naghten Rule into this civil matter from Dillon's criminal case, the parties' stipulations on this record, as to the existence of his psychiatric disability, negate the possibility of any finding or conclusion that the unbecoming conduct consisted of voluntary actions by Dillon.

Accordingly, we affirm Judge LORD's sound decision.

### ORDER

Now, January 17, 1986, the order of the Court of Common Pleas of Philadelphia County dated January 26, 1984, is affirmed.

---

DISSENTING OPINION BY JUDGE PALLADINO:

I respectfully dissent.

When, as here, an appeal is taken from an adjudication of a local agency, and a full and complete record of the agency's proceedings was made, the Court of Common Pleas and this Court are required to affirm the agency's adjudication unless constitutional rights have been violated, an error of law has been committed, procedural rules have been violated or findings of fact are not supported by substantial evidence. 2 Pa. C. S. §754(b). In the case at bar none of the conditions allowing reversal have been met. We must, therefore, reverse the trial court and affirm the adjudication of the Commission.

The initial burden of proving that Dillon had committed conduct unbecoming an officer lay with the Philadelphia Police Department. *See Doerr v. Commonwealth, Liquor Control Board,* 88 Pa. Commonwealth Ct. 610, 491 A.2d 299 (1985). As the majority notes, conduct unbecoming an officer is "any conduct which adversely affects the morale or efficiency

of the bureau to which he is assigned.'' It is also
''any conduct which has a tendency to destroy public
respect for municipal employees and confidence in the
operation of municipal services.'' The undisputed
evidence clearly establishes that Dillon's conduct was
conduct unbecoming an officer: while he was off-duty,
Officer Dillon fired shots at a passing motorist and
he also shot and seriously wounded another individual.
Officer Dillon's actions, therefore, indicate more than
an inability on his part to fulfill his official duties.
Rather, they are so contrary to a police officer's duty
to ensure the public's safety that the Commission
could reasonably find that Officer Dillon's conduct
adversely affected both the morale of the police de-
partment and the public's confidence in the abilities
and qualifications of the department's officers.

The burden of proof then shifts to Dillon to estab-
lish justification for his acts. The majority holds
that ''the facts must at least show that the officer's
conduct was voluntary.'' The majority relies, how-
ever, upon a stipulated fact showing only that Dillon
was not able to distinguish between right and wrong.
The majority would have us believe that Dillon's in-
ability to distinguish right from wrong is the equiva-
lent of a lack of volition and, therefore, this inability
justifies his conduct.

While I am willing to grant that a truly involun-
tary act may justify conduct which would otherwise
be conduct unbecoming an officer, I am unable to agree
that an inability to distinguish right from wrong ren-
ders an act involuntary. I would, therefore, conclude
that Dillon did not meet his burden of proof.

Because the grounds for finding conduct unbecom-
ing an officer have been established, I would affirm
the adjudication of the Commission. Consequently,
the decision of the trial court, reversing the Commis-
sion's determination, should itself be reversed.